# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| BAPTIST MEDICAL CENTER *et al.* |
| Plaintiffs, |
| v. |
| SYLVIA M. BURWELL, in her official capacity as Secretary of Health and Human Services |
| Defendant. |

Civil Action No. 11-cv-0899

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are the parties' objections to Magistrate Judge G. Michael Harvey's Report and Recommendation ("R&R"), which recommends that the Court grant in part and deny in part plaintiffs' motion for summary judgment, deny defendant's motion for summary judgment, and remand the matter to the agency for further proceedings. *See* R&R, ECF No. 64. Upon consideration of the R&R, plaintiffs' objections, defendant's response to those objections, and the relevant law, the Court adopts Magistrate Judge Harvey's R&R and **GRANTS IN PART** and **DENIES IN PART** plaintiffs' motion for summary judgment, **DENIES** defendant's motion for summary judgment, and **REMANDS** this matter to the agency.

## I. Background

The Court will not restate the full factual background of this case, which is set forth in the Report and Recommendation. *See* R&R, ECF No. 64 at 3–8.[1] By way of general overview, this case concerns the administration of Medicare, the federal program that provides health insurance to the elderly and disabled. *See* 42 U.S.C. §§ 1395-1395cc; *see also Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 2 (D.C. Cir. 2011)(explaining Medicare statutory provisions). The Centers for Medicare and Medicaid Services ("CMS") is charged with administering the Medicare program. The Medicare statute is divided into five parts; three of which are relevant to this case. *see id.*

The first relevant part is Medicare Part A which covers medical services provided by hospitals and other institutional providers. *See* 42 U.S.C. § 1395c. Under Part A, providers are paid directly by the Secretary of Health and Human services for the services they provide. *See id.* §§ 1395f(a)-(b), 1395x(u). This payment arrangement is commonly known as the fee-for-service system. *Northeast Hosp.*, 657 F.3d at 2 (referring to the "traditional Part A fee-for-service system.").

Over the last forty years, Congress has provided an alternative to the fee-for-service arrangement under Part A

---

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

through different arrangements. Medicare Part C, the second
relevant part, is an alternative to the fee-for-service system
that allows an individual to choose to enroll with a Health
Maintenance Organization ("HMO"), preferred organization, or
other private managed care plan after 1999.[2] *See* Balanced Budget
Act of 1997 (BBA), Pub. L. No. 105-33, §4001, 111 Stat. 251, 270
(codified at 42 U.S.C. § 1395w-21). If a person chooses to enroll
in Part C, the Secretary makes payments to the managed care
plan, rather than directly to the provider. *Id.* § 1395w–
21(i)(1).

From 1972 through the end of 1998, as an alternative to the
traditional fee-for-service system, Medicare beneficiaries
instead could enroll with a managed care organization, such as
an HMO, which entered into a payment contract with Medicare. *See*
Section 1876 of the Social Security Act; 42 U.S.C. § 1395mm
("HMO statute").[3] Similar to present-day Medicare Part C, if a
person chose to enroll in an HMO the Secretary made payments to
the managed care plan, rather than to the provider. The fiscal

---

[2] Part C was formerly referred to as "Medicare + Choice" and is
currently referred to as "Medicare Advantage." The parties refer
to Part C in their briefing when discussing the HMO statute, now
located in Part E, because it was located in Part C of the
Medicare statute during the relevant time period.

[3] The Medicare HMO statute, 42 U.S.C. § 1395mm, is and has been
located in the "Miscellaneous Provisions" part of the Medicare
statute. During the periods at issue, "Miscellaneous Provisions"
were gathered in part C. Today, the Medicare + Choice (or
Medicare Advantage) program is located in Part C, and the
"Miscellaneous Provisions" have been moved to Part E.

periods at issue in this case are 1993–1998, *i.e.*, prior to 1999, and therefore are governed by the HMO statute.

Medicare Part E sets out various "Miscellaneous Provisions." Relevant to this case, Part E sets out a Prospective Payment System ("PPS") for reimbursing inpatient hospital services based on "prospectively determined national and regional rates rather than on the actual amount the hospital spends." *Northeast Hosp.*, 657 F.3d at 3 (citing 42 U.S.C. § 1395ww(d)(1)-(4)). Providers are also entitled to payment adjustments based on certain factors. At issue in this case is the disproportionate share hospital ("DSH") payment adjustment, which provides that the Secretary pays more for services provided by hospitals that "serve[] a significantly disproportionate number of low-income patients." *Id.* (citing 42 U.S.C. § 1395ww(d)(5)(F)(i)(I)). "Congress assumes that such patients cost more to treat than the average Medicare patients, so these hospitals are entitled to supplemental payments." *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1105 (D.C. Cir. 2014).

Whether a hospital qualifies for a Medicare DSH adjustment, and the amount of that adjustment, depends on the hospital's "disproportionate patient percentage ['DPP']." 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vii). This percentage is a "proxy measure" for the number of low-income patients a hospital serves. H.R. REP. No. 99-241, pt. 1, at 17 (1985). The DPP is defined as the

4

sum of two fractions expressed as percentages. *See* 42 U.S.C.
§ 1395ww(d)(5)(F)(vi). Those fractions are referred to as the
"Medicare" fraction and the "Medicaid" fraction. *Id.*
§ 1395ww(d)(5)(F)(vi)(I) & (II); *see also* 42 C.F.R.
§ 412.106(b)(2). Both of these fractions require consideration
of whether a patient was "entitled to benefits under Part A."
*See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

The first fraction, the Medicare fraction, is the percentage
of Medicare patients who are entitled to supplemental security
insurance. The numerator of this fraction is the sum of the
hospital's patient days for patients who were "entitled to
benefits under Part A . . . and were entitled to supplementary
[social security insurance]." *Id.* § 1395ww(d)(5)(F)(vi)(I). The
denominator of the fraction is the total number of "hospital's
patient days for such fiscal year which were made up of patients
who (for such days) were entitled to benefits under [Medicare]
Part A." *Id.*

The second fraction, the Medicaid fraction, is comprised of
the number of Medicaid patients not entitled to Medicare. The
numerator of the fraction is "the number of the hospital's
patient days for such period which consist of patients who (for
such days) were eligible for medical assistance under a State
[Medicaid] plan . . . but who were not entitled to benefits
under [Medicare] Part A." *Id.* § 1395ww(d)(5)(F)(vi)(II). The

denominator is the total number of patient days, regardless of whether the patients were eligible for assistance through a federal program. *Id.*

A "fiscal intermediary," typically a private insurance company acting as the Secretary's agent, calculates DSH adjustments. *See* 42 C.F.R. §§ 421.1, 421.3, 421.100–.128. If a hospital disagrees with the intermediary's determination, it may appeal to the Provider Reimbursement Review Board ("PRRB" or "Board"), an administrative body appointed by the Secretary. *See* 42 U.S.C. § 1395oo(a),(h). The PRRB may affirm, modify, or reverse the fiscal intermediary's award. *See id.* § 1395oo(d). The Board's decision is the final agency action unless the Secretary affirms, modifies, or reverses the Board's decision within 60 days after the provider is notified of the decision. *Id.* § 1395oo(f)(1). A provider has a statutory right to seek judicial review of the agency's final decision in federal district court. *Id.*

Plaintiffs are several hospitals that offered inpatient services for individuals whose care was paid for by HMOs. *See* Compl., ECF No. 1 ¶¶ 5–6. The hospitals serve several elderly, low-income patients and are therefore entitled to supplemental payments, an amount determined by the disproportionate share percentage. *See id.* For fiscal years, 1995-1998, the Intermediary concluded HMO patient days should not be in the

numerator of the Medicaid fraction. *QRS 1995-1998 DSH Medicare HMO Days Grps. v. BlueCross BlueShield Ass'n*, PRRB Dec. No. 2011-D20, 2011 WL 1231544, at *4 (Mar. 16, 2011). Plaintiffs appealed this decision to the PRRB, arguing that the patient days should be included in the Medicaid fraction because the HMO patients are not entitled to benefits under Part A. *Id.* This distinction matters because, if Part C beneficiaries are "included in the Medicaid fraction rather than the Medicare fraction, the hospitals receive a great deal more compensation." *Allina*, 746 F.3d at 1105.

The PRRB disagreed with plaintiffs and found that the "Intermediary properly excluded Medicare HMO days from the Medicaid fraction. QRS 1995-1998 DSH *Medicare HMO Days Grps.*, 2011 WL 1231544, at *6. The Board reasoned that the HMO statute required HMO patients to be excluded from the Medicaid fraction because payments to HMOs are made from the Federal Hospital Insurance Trust Fund established by Part A. *Id.* at 5-6. The Board's explanation was as follows:

> The Federal Hospital Insurance Trust Fund was established under Part A of the Medicare Act to fund the services provided under Part A. 42 U.S.C. §§1395i(a) and (h). Consequently, prior to the change in the Medicare Act which created Part C, HMO inpatient hospital services were paid pursuant to Part A of Medicare.
>
> In *Jewish Hospital, Inc. v. Secretary of Health and Human Services*, 19 F.3d 270, 274-

7

75 (6th Cir. 1994), the term "entitled" as it is used in the definition of the Medicare fraction at 42 U.S.C. §1395ww(d)(5)(F), was defined as follows:

"[t]o be entitled to some benefit means that one possesses the ***right or title*** to that benefit. Thus the Medicare proxy ***fixes*** the calculation upon the absolute right to receive an independent and readily defined payment."

The explicit language of the DSH statute limits inclusion in the Medicaid fraction to those individuals or beneficiaries "eligible for medical assistance under state plan approved under XIX" and "***not entitled to benefits under Part A***." 42 C.F.R. §412.106(b)(4)(emphasis added). In that services to Medicare beneficiaries enrolled in an HMO were paid under Part A during the fiscal periods prior to the effective date of Part C, the DSH statute requires those days be ***excluded*** from the Medicaid percentage.

*Id.* at *5-6 (emphasis in original). Therefore, the Board found that "the Intermediary properly excluded Medicare HMO days from the Medicaid fraction." *Id.* at 6.

The Board also made a finding that the Secretary's policy during 1995-1998, the years at issue in this case, was to include the HMO patient days in the Medicare, but not the Medicaid fraction. *Id.* at *4. This finding was based on CMS's response to a comment in a statement published in the Federal Register that stated that CMS believed:

Based on the language of section 1886(d)(5)(F)(vi) of the Act, which states

> that the disproportionate share adjustment
> computation should include "patients who
> were entitled to benefits under Part A", we
> believe it is appropriate to include the
> days associated with Medicare patients who
> receive care at a qualified HMO. Prior to
> December 1, 1987, we were not able to
> isolate the days of care associated with
> Medicare patients in HMOs and, therefore,
> were unable to fold this number into the
> calculation. However, as of December 1,
> 1987, a field was included on the Medicare
> Provider Analysis and Review (MEDPAR) file
> that allows us to isolate those HMO days
> that are associated with Medicare patients.
> Therefore, since that time, we have been
> including HMO days in SSI/Medicare
> percentage.

*Id.* The Board's decision was issued on March 16, 2011 and the Secretary declined to review the decision, making that decision the final agency action. *See* 42 U.S.C. § 1395oo(f)(1).

Plaintiffs sought judicial review under the APA, 5 U.S.C. § 701, *et seq.*, of the Board's decision to exclude HMO patient days from the Medicaid fraction. The parties filed cross-motions for summary judgment and the case was referred to Magistrate Judge Harvey for an R&R. The parties have filed objections to the R&R and this case is ripe for decision.

## II. Standards of Review

### A. Objections to a Magistrate Judge's R&R

Pursuant to Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered a recommended disposition, a party may file specific written objections. The district court "must

determine *de novo* any part of the magistrate judge's disposition
that has been properly objected to," and "may accept, reject or
modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).
Proper objections "shall specifically identify the portions of
the proposed findings and recommendations to which objection is
made and the basis for objection." Local Civ. R. 72.3(b). "As
numerous courts have held, objections which merely rehash an
argument presented and considered by the magistrate judge are
not 'properly objected to' and are therefore not entitled to *de
novo* review." *Shurtleff v. U.S. Envtl. Prot. Agency*, 991 F.
Supp. 2d 1, 8 (D.D.C. 2013)(quoting *Morgan v. Astrue*, Case No.
08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)
(collecting cases)). Likewise, a court need not consider cursory
objections made only in a footnote. *Hutchins v. District of
Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999).

### B. Summary Judgment Standard

Summary judgment should be granted only if the moving party
has shown that there are no genuine issues of material fact and
that the moving party is entitled to judgment as a matter of
law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317,
323 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991
(D.C. Cir. 2002). In a case involving review of a final agency
action under the APA, however, Rule 56(c)'s standard does not
apply because of the court's limited role in reviewing the

administrative record. *See N.C. Fisheries Ass'n v. Gutierrez*,
518 F. Supp. 2d 62, 79 (D.D.C. 2007).

Under the APA, it is the agency's role to resolve factual
issues and to arrive at a decision that is supported by the
administrative record, whereas "the function of the district
court is to determine whether or not as a matter of law the
evidence in the administrative record permitted the agency to
make the decision it did." *Stuttering Found. of America v.
Springer*, 498 F. Supp. 2d 203, 208 (D.D.C. 2007)(citation
omitted). "Summary judgment thus serves as the mechanism for
deciding, as a matter of law, whether the agency action is
supported by the administrative record and is otherwise
consistent with the APA standard of review." *Id.* (citing
*Richards v. Immigration & Naturalization Serv.*, 554 F.2d 1173,
1177 n.28 (D.C. Cir. 1977)).

When reviewing agency action pursuant to the APA, the Court
must determine whether the challenged decision is, *inter alia*,
"arbitrary, capricious, an abuse of discretion, or otherwise not
in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of
statutory jurisdiction, authority, or limitations, or short of
statutory right," *id.* § 706(2)(C); or "without observance of
procedure required by law," *id.* § 706(2)(D). The arbitrary or
capricious provision, under subsection 706(2)(A), "is a
catchall, picking up administrative misconduct not covered by

the other more specific paragraphs" of the APA. *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.* (ADPSO), 745 F.2d 677, 683 (D.C. Cir. 1984). The "scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Although this scope of review is deferential, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decision making." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). In evaluating agency actions under the arbitrary and capricious standard, the court must be satisfied that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006)(internal citation and quotation marks omitted). Moreover, when an agency "has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action." *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999)(citation and internal quotation marks omitted). In other words, "the agency must explain why it decided to act as it did." *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

## III. Analysis

In its motion for summary judgment plaintiffs argued that the Board's ruling that individuals enrolled in HMOs between 1993 and 1998 should not be included in the Medicaid fraction based on the Board's interpretation of the phrase "entitled to benefits under Part A" was inconsistent with the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") precedent and therefore in violation of the APA. Pls.' Mot., ECF No. 53 at 11, 15-42 (citing *Northeast Hosp.*, 657 F.3d at 1). Defendant argued that the plaintiffs in this case were indeed entitled to benefits under Medicare Part A, under the Secretary's reasonable interpretation of the HMO statute, and therefore there was no violation of the APA. Def.'s Mot., ECF No. 54 at 21. Specifically, defendant argued, contrary to even the Board's analysis, that an entitlement to benefits under Part A simply means eligibility for benefits and not actual payment. Def.'s Mot., ECF No. 54 at 21.

Magistrate Judge Harvey found that the Board's decision was arbitrary and capricious and the R&R recommends that the Court grant plaintiffs' motion for summary judgment in part because: (1) the agency's interpretation of the term "entitled to benefits under Part A" to mean having a right to payment made for care under Part A was in direct conflict with the agency's contemporaneous interpretation of the phrase offered to the D.C.

Circuit in *Northeast Hospital*; and (2) the agency failed to consider whether its conclusion that HMO patient days should be excluded from the Medicaid fraction was a departure from clear prior policy during the time period relevant to this dispute. R&R, ECF No. 64 at 13–21. Magistrate Judge Harvey recognized that the Board's failure to address evidence of a contrary practice casts doubt on whether the adjudication should be given retroactive effect. *Id.* at 20. Magistrate Judge Harvey noted one additional wrinkle in the case, specifically that Plaintiff Stamford Hospital's dispute encompasses fiscal years 1993-1994, while all other plaintiffs dispute fiscal years ranging from 1995-1998. *Id.* at 22. Magistrate Judge Harvey pointed out that there was no evidence in the administrative record for the fiscal years of 1993-1994. *Id.*

Magistrate Judge Harvey recommends that the Court remand this case back to the Secretary to: (1) provide its rationale for its contemporaneous contradicting interpretation of the DSH calculation, or to align its interpretation with that offered by the Secretary in *Northeast Hospital*; (2) consider whether the Secretary's interpretation conflicts with prior practices, and, if so, whether plaintiffs had settled expectations and whether the changes produced real economic consequences for plaintiffs; and (3) for the parties to develop a factual record concerning the Secretary's treatment of HMO patient days during 1993-1994

fiscal years. *Id.* at 15–22.

In their objections, plaintiffs agree with Magistrate Judge Harvey's finding that the Board's decision was arbitrary and capricious, however plaintiffs do not believe that a remand is necessary. Pls.' Objection, ECF No. 68 at 1. Rather than remand, plaintiffs argue that the appropriate remedy is for the Court to order the Board to count the HMO patient days in the Medicaid fraction, which would require this Court to rule on whether the HMO patient days were in fact paid under Medicare Part A during the time frame at issue in this case. *Id.* at 8–11. Plaintiffs also argue that no remand is necessary to consider Stamford Hospital's claims related to the 1993-1994 fiscal years because there is sufficient evidence in the administrative record from which a Court can determine that HMO patient days were excluded from the Medicare fraction as far back as 1987. *Id.* at 16. Alternatively, in the event of a remand, plaintiffs request that this Court retain jurisdiction over this case.

Defendant, on the other hand, disagrees with Magistrate Judge Harvey's finding that the Board's decision was arbitrary and capricious, but agrees that if the Court adopts the R&R that a remand is the appropriate remedy. Def.'s Objection, ECF No. 69 at 10. Defendant argues that Magistrate Judge Harvey erred in relying on *Northeast Hospital* because that case involved a different legal question about a different Medicare program,

Part C. *Id.* at 8–10. Defendant states, however, that a remand is appropriate in this case if the Court grants summary judgment in plaintiffs' favor. *Id.* at 10. Defendant takes no position as to whether the Court should retain jurisdiction over this case pending administrative review. *See generally, id.*

The Court will first address defendant's argument that the Board's decision was not in violation of the APA. After finding that the Board indeed violated the APA in failing to address both its contrary policy regarding HMO patient days, and contrary contemporaneous interpretation of the Medicare statute, the Court will next address plaintiffs' objections which concern the appropriate remedy in this case.

### A. Defendant's Objections

Defendant objects to Magistrate Judge Harvey's recommendation that the Board's decision to exclude HMO patient days from the Medicaid fraction was in violation of the APA. *See generally* Def.'s Objection, ECF No. 69. Again, under APA review, the question for the Court is whether the Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs.*, 463 U.S. at 43. "An agency may not, for example, depart from a prior policy *sub silentio*." *FCC v. Fox Tele. Stations*, *Inc.*, 556 U.S. 502, 515 (2009). Instead, "[a]n agency must . . . 'display awareness that it is changing position'" and provide "'good reasons'" for the change. *Mary V. Harris Found. v. FCC*, 776 F.3d 21, 24–25 (D.C. Cir. 2015)(quoting *Fox Tele. Stations*, 556 U.S. at 515). Similarly, "[a]n agency errs when it ignores contradictory relevant evidence regarding a critical factor in its decision." *New Life Evangelistic Ctr., Inc. v. Sebelius*, 672 F. Supp. 2d 61, 74 (D.D.C. 2009)(citing *Morall v. Drug Enforcement Admin.*, 412 F.3d 165, 178 (D.C. Cir. 2005)); *see also El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*, 396 F.3d 1265, 1278 (D.C. Cir. 2005)(finding agency action "arbitrary and capricious because [it] failed adequately to address relevant evidence before it"). These considerations also apply to agency adjudications. *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998).

Magistrate Judge Harvey found that the Board's decision was arbitrary and capricious because it failed to explain its contrary change in position and failed to consider an important aspect of the problem. *See* R&R, ECF No. 64 at 13–21. The Court

17

agrees. The Board's decision was based on an interpretation of the statute that focused solely on the source of payment. 2011 WL 1231544 at * 6. The Board concluded that "services to Medicare beneficiaries enrolled in an HMO were paid under Part A during the fiscal periods prior to the effective date of Part C, the DSH statute requires those days be **excluded** from the Medicaid percentage." *Id.* Because the Federal Hospital Insurance Trust Fund was established under Part A to fund services under Part A, the Board reasoned, HMO inpatient hospital services were paid pursuant to Part A and therefore the HMO patients were "entitled to benefits under Part A." *Id.* And because HMO patients were entitled to benefits under Part A under this interpretation of the statute, the Board excluded the HMO patient days from the Medicaid fraction. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)(explaining numerator of Medicaid fraction consists of patient days for individuals eligible for medical assistance through a state plan, but not entitled to benefits under Medicare Part A).

The problem with that reasoning, as Magistrate Judge Harvey explained, is that this holding is based on an interpretation that "flatly contradicts" the agency's contemporaneous interpretation offered in *Northeast Hospital* of the same statutory provision. *See* R&R, ECF No. 64 at 13–14. In *Northeast Hospital*, the Secretary argued that "entitled to benefits under

Part A" meant mere eligibility for benefits and not a right or entitlement to payment. *Northeast Hosp.*, 657 F.3d at 6; cf. 2011 WL 1231544 at * 6 ("[t]o be entitled to some benefit means that one possesses the right or title to that benefit. Thus the Medicare proxy fixes the calculation upon the absolute right to receive an independent and readily defined payment.").

The Board failed to consider, or even acknowledge, that it was simultaneously arguing for contrary interpretations of the same statutory provisions. In the administrative proceedings the Board interpreted the phrase "entitled to benefits under Part A" in the DSH calculation to mean having a right to payment for care made under Part A. *Medicare HMO Days Grps.*, 2011 WL 1231544, at *5-6. Whereas the agency's interpretation offered to the D.C. Circuit was eligibility for payment and not a right. *See Northeast Hosp.*, 657 F.3d at 6. The Board's decision relied solely on this contrary interpretation of the statute, without any explanation of its change of position. As the Supreme Court has stated, "the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position." *F.C.C. v. Fox*, 556 U.S. 502, 515 (2009). Without some recognition of a reason for this contrary interpretation, the agency did not meet its obligation under the APA to provide a reasoned explanation for its actions. *See id.*

Similarly, the Board's failure to address its change in policy rendered its decision arbitrary and capricious. As the D.C. Circuit explained in *Northeast Hospital*, during the fiscal years at issue in this case, the agency's practice was to **exclude** the HMO patient days from the Medicare fraction. *Northeast Hosp.*, 657 F.3d at 16 (emphasis added). In responding to the Secretary's argument that the agency's rulemaking in 1990 shows that the agency "interpreted the Medicare fraction to include managed care days," the D.C. Circuit explained that the Secretary's argument was belied by the agency's actual practice with regard to HMOs from at least as early as 1995. *Id.* The Secretary's actual practice of excluding HMO patient days from the Medicare fraction was evidenced by the fact that "[the Secretary] was not using the managed care field in the program file for calculating Medicare fractions, making it impossible to count HMO days in the Medicare fraction." *Id.* (citing *Baystate Med. Ctr. v. Mut. of Omaha Ins. Co.*, PRRB Dec. No. 2006-D20, 2006 WL 752453, at *31 (Mar. 17, 2006)).

When presented with evidence of this prior policy of excluding HMO patient days from the Medicare fraction in the proceedings below, the Board ignored it. *See* Administrative Record ("A.R."), ECF No. 51-2 at 90-91. During the administrative proceedings, plaintiffs referenced testimony and government reports which supported its argument that the agency

"did not actually adopt or follow [a] policy to count Medicare
HMO days in the Medicare [fraction]." *Id.* In failing to respond
to this evidence, the Board failed to examine the "relevant data
and articulate a satisfactory explanation" for its determination
of the issue, and ignored contradictory evidence regarding a
critical factor in its decision. *Alpharma, Inc.*, 460 F.3d at 6
(D.C. Cir. 2006). Based on these errors, the Board did not
adequately explain its reasoning and its decision was arbitrary
and capricious. *See Atchinson Topeka and Sante Fe Railway Co.,
v. Wichita Bd. Of Trade*, 412 U.S. 800 at 808 (1973)("Whatever
the ground for the departure from prior norms . . . it must be
clearly set forth so that the reviewing court may understand the
basis of the agency's actions.")

Defendant responds by arguing *Northeast Hospital* was a
different case reviewing a different statutory scheme. Def.'s
Objection, ECF No. 69 at 5–10. The distinctions pointed out by
the defendant, however, are not legally significant. It is true
that Medicare Part C and the HMO statute are different systems,
however, the two systems are merely two types of managed care
programs. Each serves the same function within disputes over DSH
adjustments because enrollment in either program provides a
basis to claim that an enrollee is not "entitled to benefits
under Part A." *See Northeast Hosp.*, 657 F.3d at 6 (identical
argument with respect to Part C enrollment). In *Northeast*

*Hospital*, the Secretary offered the treatment of HMO patient days as evidence that Medicare Part C patient days should be treated the same because both HMO and Medicare Part C patient days are types of "managed care days." *Id.* at 16 ("The Secretary argues that the 1990 rulemaking shows she has long interpreted the Medicare fraction to include managed care days and has never limited the calculation to reimbursements paid directly to hospitals under Part A."). Defendant now seeks to retreat from this characterization to argue that the two programs should be treated differently. To the extent that the Secretary seeks to explain away the contrary position, this Court may not accept defendant's post-hoc rationalizations as a substitute for the Board's explanation, or lack thereof. *See Remmie v. Mabus*, 898 F. Supp. 2d 108, 120 (D.D.C. 2012)(stating agency's purported rationale of a final decision explained in its briefing to the Court is no substitute for the agency's actual explanation).

### B. Plaintiffs' Objections

Plaintiffs take issue with Magistrate Judge Harvey's recommendation to remand this case back to the Board, rather than to direct the Board to include the HMO patient days in the Medicaid fraction. Pls.' Objection, ECF No. 68 at 8. As the D.C. Circuit has explained, a remand to an agency with instructions to reach a certain result is a "remedy reserved for rare cases of an agency's persistent failure to explain itself," *Checkosky*

*v. S.E.C.*, 139 F.3d 221, 222 (1998), or "in rare cases[] when the reviewing court is convinced that remand would serve no purpose," *Allina*, 746 F.3d at 1111 n.6. Furthermore, "legitimate concerns about judicial overreaching always militate in favor of affording the agency just one more chance to explain its decision." *Tennessee Gas Pipeline Co. v. F.E.R.C.*, 926 F.2d 1206, 1214 (D.C. Cir. 1991)(Thomas, J., concurring).

Plaintiffs argue that remand for further proceedings is not necessary in this case because the Board "must apply the version of the Secretary's regulations in effect during the time periods relevant to this dispute, which limited the Medicare fraction to only those specific inpatient days actually paid by Part A." Pls.' Objection, ECF No. 68 at 8. In other words, plaintiffs request that the Court "rule on whether HMO days were actually paid under Part A," and if they were not paid, to order the Board to count the HMO patient days under the Medicaid fraction. *Id.*

Several cases in the D.C. Circuit counsel against this option. In *Tennessee Gas Pipeline Co. v. F.E.R.C.*, the D.C. Circuit considered whether it was appropriate to remand for a third time to an agency which twice failed to adequately explain its decision. 926 F.2d 1206. Despite the fact that the case had "dragged on for about eight years" and the agency had supplied "woefully inadequa[te]" explanations in both the original and

the remand proceedings, the Court remanded the case back to
F.E.R.C. a third time because "ratemaking is for the Commission
and not for [the court]." *Id.* at 1206.

Conversely, in *Greyhound Corp. v. ICC*, the D.C. Circuit
found that, for the second time, the agency failed to justify
its conclusion to maintain securities jurisdiction over the
Greyhound Corporation although the agency's own precedent seemed
to preclude such a ruling. 668 F.2d 1354 (D.C. Cir. 1981). The
D.C. Circuit concluded that since the agency had "ample time and
opportunity" during the first remand to "provide a reasoned
explanation" for the decision to maintain securities
jurisdiction, but failed to do so, the Court found "no useful
purpose to be served" by giving the agency a third opportunity
to supply a satisfactory explanation. *Id.* at 364.

Perhaps most relevant to this case is the D.C. Circuit's
opinion in *Allina Health Services v. Sebelius*. 746 F.3d 1102. As
in this case, plaintiffs in *Allina* alleged the agency had
erroneously interpreted the term "entitled to benefits under
Part A" for the purposes of the DSH calculation. *Id.* at 1105.
The district court held, among other things, that the agency had
failed to sufficiently explain a change in policy of how the DSH
calculation was computed. *Id.* Rather than remand the case back
to the agency, however, the district court "ordered the
Secretary to recalculate the hospitals' reimbursements by

24

counting Part C days under the Medicaid fraction." *Id.* at 1107.

The D.C. Circuit reversed the portion of the district court's opinion directing the Secretary to recalculate the hospitals' reimbursements using an alternative methodology. *Id.* at 1111. The D.C. Circuit stated that the district court erred in not simply identifying the error and remanding for the agency to address that error. *Id.* (citation omitted); *see also Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 201 (1947)("After the remand was made, therefore, the Commission was bound to deal with the problem afresh, performing the function delegated to it by Congress.").

Plaintiffs argue that "[t]he Court would not be intruding upon the agency's prerogatives in making this determination, because the Board has already ruled that HMO days are paid under Part A." Pls.' Objection, ECF No. 68 at 10. This argument misses the point. The Board's determination was made under an inconsistent interpretation of a statutory provision. Moreover, the Board failed to recognize, let alone address, what seems to be a clear change in policy during the fiscal years relevant to this case. Magistrate Judge Harvey's recommendation for remand is a sound one because the Board may very well make a different determination once it "aligns its interpretation of the DSH calculation with that offered by the Secretary in *Northeast Hospital*." *See* R&R, ECF No. 64 at 15. Under such circumstances,

the Court is not convinced that the Board's actions were egregious enough "to trigger the once-in-a-decade" remedy of a Court directing the agency on how to solve a particular problem. *Tennessee Gas Pipeline*, 926 F.2d at 1214; s*ee also Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) ("[U]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards.").

## C. The Court Will Retain Jurisdiction Pending Completion of the Remand Proceedings

Plaintiffs request that in the event of a remand this Court retain jurisdiction over this case. Pls.' Objection, ECF No. 68 at 20–21. Defendants do not object to this request. *See generally* Def.'s Objection, ECF No. 69.

The "norm" in administrative cases is to "vacate agency action that is held to be arbitrary and capricious and remand for further proceedings consistent with the judicial decision, without retaining oversight over the remand proceedings." *Baystate Med. Ctr. v. Leavitt*, 587 F. Supp. 2d 37, 41 (D.D.C. 2008)(collecting cases). A court does have "discretion to retain jurisdiction pending completion of a remand and to order progress reports in the meantime" in unusual circumstances such

as "cases alleging unreasonable delay of agency action." *Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 917 F. Supp. 2d 1, 3 (D.D.C. 2012).

In this case, plaintiffs argue the likelihood of extreme agency delay is sufficient to warrant the retention of jurisdiction over this case. The appeals in this case were filed in 2004 and the Board rendered a decision seven years later. In light of the long delay in its first appeals, plaintiffs request semi-annual reports on the status of the case to this Court during remand. Considering the lapse of time between the various appeals and the decision during the original administrative proceedings, and the fact that the government does not object to this request, the Court will retain jurisdiction over this action.

## IV. Conclusion and Order

For the foregoing reasons, the Court adopts Magistrate Judge Harvey's R&R. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** plaintiffs' motion for summary judgment, **DENIES** defendant's motion for summary judgment, and **REMANDS** this matter to the agency. The Court shall retain jurisdiction over this matter pending the completion of the remand proceedings.

**SO ORDERED.**

**Signed:**   **Emmet G. Sullivan**
**United States District Judge**
**February 28, 2019**